In re Judith M. **STRATTON**, Debtor.

**Ronald R. Sticka, Trustee, Plaintiff,**

v.

**Lawrence H. Geller, Defendant.**

**Bankruptcy No. 600–66349–aer7. Adversary No. 02–6311–aer.**

United States Bankruptcy Court, D. Oregon.

Sept. 26, 2003.

Ronald Sticka, Eugene, OR, for Plaintiff.

Patrick Wade, Eugene, OR, for Defendant.

## AMENDED MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Chief Judge.

The Defendant is an attorney who represented the debtor in prepetition dissolution of marriage proceedings in the Superior Court of the State of California for Orange County (the California Court). The Defendant claims a lien in certain funds generated by a refinance of the marital residence as ordered by the California Court in those proceedings. The Plaintiff, trustee, seeks to avoid that lien and preserve it for the benefit of the estate, herein, and/or in the alternative, Plaintiff objects to the amount of Defendant's claim, challenging the reasonableness of the fees generated in the dissolution proceedings. The matter is presently before the Court on Cross–Motions for Summary Judgment.

### BACKGROUND

From the pleadings and submissions, the court finds the following facts. Debtor retained Defendant to represent her in the dissolution proceedings in August, 1998 when they entered into a written fee agreement.

After the commencement of the representation, Defendant and Debtor agreed that Defendant would be paid for the legal services provided (and to be provided) from Debtor's share of the equity in the marital residence in Lake Forest, California. They formalized their agreement by the Debtor executing a promissory note and trust deed on January 11, 1999. The trust deed was recorded in the Orange County real property records on February 24, 1999. Debtor terminated Defendant's services in mid-November, 1999; thereaf-

ter she was represented in the dissolution proceeding by other counsel.

Defendant claimed a balance due and owing by Debtor at the time Defendant ceased providing services at $44,593.71, which included $44,225.17 for services and expenses and $368.54 in accrued late charges.

Judgments entered by the California court in January and May of 2000 awarded the marital residence to Debtor's ex-husband, Frank Miles, (at least for the purpose of refinancing within a given time)[1] and required payment of Defendant's lien from Debtor's share of the equity therein. In October, 2000, the California court ordered the execution of an interspousal transfer deed documenting the conveyance of Debtor's interest in the marital residence to Frank Miles. The deed was recorded in the Orange County, California, real property records on October 24, 2000.

Debtor filed her Chapter 7 petition, herein, on October 27, 2000. Defendant filed a proof of claim on March 23, 2001, in the amount of $48,302.75 secured by the marital residence.

Frank Miles refinanced the marital residence in April, 2002. At that time, Defendant claimed a balance owing of $62,552.33, consisting of $44,225.17 in fees and expenses through mid-November, 1999, $10,638.27 in accrued late charges, and $7,688.89 in accrued legal expenses. As insufficient funds were realized to pay the full claim, Defendant agreed to accept $59,112.47 in satisfaction of his lien. This sum is being held by Defendant's counsel, pending further court order.

### Summary Judgment Standards

Summary judgment is appropriate, if there is no genuine issue as to any materi-al fact and the moving party is entitled to judgment as a matter of law. FRCP 56 made applicable by FRBP 7056.

The moving party has the burden to establish the absence of a material issue of fact for trial. FRCP 56(c). The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Service., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Material facts are such facts as may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine factual issue exists for trial where a nonmoving party rests on mere allegations or denials, or shows "some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Simone v. Manning*, 930 F.Supp. 1434 (D.Or.1996).

### Discussion

### Defendant's Motion for Summary Judgment:

*Claims One & Two:*

Plaintiff's First Claim for Relief is brought under the Truth in Lending Act (TILA) to rescind the January 11, 1999 note and trust deed. His Second Claim for Relief is for damages and attorney's fees provided by TILA. Defendant argues he is not a "creditor" as that term is defined in TILA and thus is not subject to the provisions thereof.

---

1. The scope of the judgments is the subject of a separate adversary proceeding between Plaintiff herein and Frank Miles.

■ Under 12 C.F.R. § 226.2(a)(17), "creditor" means, in pertinent part: (i) A person (A) who *regularly* extends consumer *credit* that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a downpayment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract. (emphasis added).[2]

"Credit" means the "right to defer payment of debt or to incur debt and defer its payment." 12 C.F.R. § 226.2(a)(14). "Regularly" is defined in pertinent part as follows:

> A person regularly extends consumer credit only if it extended credit ... more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year.

12 C.F.R. § 226.2(a)(17)(i) (f.n.# 3).

Defendant, by way of his declaration, admits that by virtue of the note, he extended "credit" to Debtor, but denies extending "credit" to enough other clients to meet the "regularity" requirement. Plaintiff counters by arguing that credit extensions need not be to different consumers, and that each separate service billed to Debtor counted as an extension for purposes of the thresholds referenced above. In order to determine what transactions are counted for the "regularity" requirement, the court must first determine what type of "credit" Defendant extended to Debtor.

Under TILA, there are two (2) types of "credit", open-end and closed-end. Open-end credit means consumer credit extended by a creditor under a plan in which:

> (i) The creditor reasonably contemplates repeated transactions;
>
> (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and
>
> (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

12 C.F.R. § 226.2(a)(20). "Closed-end credit" means "consumer credit other than open-end credit as defined in this section." 12 C.F.R. § 226.2(a)(10).

The note at issue gave Debtor ninety (90) days from January 11, 1999, to pay $20,000 at 10% interest from November 1, 1998, payable in accordance with the Attorney Client Agreement dated August 13, 1998. The note further provides:

> It is understood that although this note is for the sum of $20,000, the actual amount of indebtedness shall not be greater than the actual amount of Attorney fees and Costs incurred as set forth in Obligor's monthly statement of account.
>
> In the event said statement exceeds the sum of $20,000, this note shall be adjusted to cover said amount accordingly.[3]

---

**2.** Likewise, TILA generally applies to each individual or business that offers or extends credit when four conditions are met: (i) the credit is offered or extended to consumers; (ii) the offering or extension of credit is done *regularly;* (iii) the credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and (iv) the credit is primarily for personal, family, or household purposes. 12 C.F.R. § 226.1(c) (emphasis added).

**3.** The January 11, 1999 trust deed gives a lien on the marital residence to secure, among other things, "[p]ayment of the indebtedness

The August 13, 1998 Attorney Client Agreement provides for periodic deposits to trust up to a maximum of $3,500 at Defendant's request. It further provides:

> It is understood and agreed that in the event the client's deposit(s) [to trust] . . . are depleted, client shall pay any and all billings within fifteen (15) days of receipt of statement. An interest rate of ten (10) percent per annum shall apply to the unpaid balance. In any event the interest shall not exceed that permitted by law.

Defendant maintains he extended open-end credit to Debtor, which Plaintiff does not expressly contest. There is no dispute repeat transactions were contemplated, and that a finance charge (the note's interest) applied.[4] Credit was replenished with each payment (if any), because the amount of debt was tied to the balance of the attorney's fees as they accrued, and for which Debtor received a credit when she paid a particular billing. The credit plan may have been finite in duration (ninety (90) days per the note),[5] but that does not preclude credit being "open-end." Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I, Subpart A, Cmt. 2(a)(20)(5) ("[a] line of credit is self-replenishing even though the plan itself has a fixed expiration date, as long as during the plan's existence the consumer may use the line, repay, and reuse the credit").

■ As for counting transactions for the "regularity" requirement:

> For purposes of closed-end credit, the creditor counts each credit transaction. *For open-end credit, transactions means accounts, so that outstanding accounts are counted instead of individual credit extensions.*

Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I, Subpart A, Cmt. 2(a)(17)(i)(4) (emphasis added).[6]

This Court concludes that Defendant and Debtor entered into only one transaction for purposes of the "regularity" requirement. It follows that Defendant is not a "creditor" under TILA, and he is entitled to summary judgment as a matter of law as to the Plaintiff's First and Second Claims for Relief.

■ In the alternative, Defendant has also raised a timeliness defense to Plaintiff's First Claim for Relief (Rescission). With limited exceptions not applicable here, the right of TILA rescission "expires" at the latest three (3) years after a transaction's "consummation." 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). "Consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). The Supreme Court has held that the three (3) year period is not a statute of limitations, but is instead a complete bar to assertion of the right, such that it cannot be asserted in the form of recoupment, if the creditor's collection suit was filed past the three (3) years. *Beach v. Ocwen Federal Bank,* 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). Here,

---

evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $20000.00 . . . ."

**4.** "Finance charge" includes interest. 12 C.F.R. § 226.4(b)(1).

**5.** Per Defendant's declaration, he had previously agreed to wait until the marital resi-

dence was sold to obtain payment of his fees out of Debtor's equity therein. There is no indication Defendant has sought to enforce the note's ninety (90) day language.

**6.** Unless demonstrably irrational, the staff interpretations are dispositive. *Ford Motor Credit Company v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

the transaction was "consummated" on January 11, 1999, the date the note and trust deed were executed.[7] Debtor filed her Ch. 7 petition on October 27, 2000. It is undisputed that the first notice of rescission was by way of the present adversary complaint filed on October 4, 2002 and served on October 10, 2002, more than three years from "consummation".

■ Plaintiff contends, however, that because the bankruptcy case was filed before the expiration of the three (3) years, 11 U.S.C. § 108(a)[8] extends the time period another two (2) years.[9] Since *Beach*, however, the only authority to construe § 108 as it relates to TILA rescission has held it to be inapplicable.

In *Williams v. EMC Mortgage Corp. (In re Williams)*, 276 B.R. 394 (Bankr.E.D.Pa. 2002), the court held § 108(c)[10] did not extend the three (3) years, because "the time period of Section 1635(f) does not fix a time period for bringing or continuing a civil action", *Id.* at 397, quoting the *Beach* court as follows:

> [Section 1635(f)] says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous.

*Id.* at 397 (quoting *Beach, supra,* 523 U.S. at 417, 118 S.Ct. 1408).[11]

Section 108(a) has analogous operative language to § 108(c) regarding the time to "commence an action." This court, applying *Beach,* and in accord with *Williams,* likewise concludes that § 108(a) is inapplicable. Thus, Plaintiff's rescission claim is

---

7. The parties concede that at the latest, "consummation" occurred on February 24, 1999, the date the trust deed was recorded, which is still more than 3 years before the instant adversary complaint.

8. Except as otherwise noted, all subsequent statutory references are to Title 11, United States Code.

9. Section 108(a) provides:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may *commence an action,* and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) two years after the order for relief. (emphasis added).

10. Section 108(c) provides as follows:

Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for *commencing* or continuing *a civil action* in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim. (emphasis added).

11. Likewise, the court in *Thomas v. GMAC Residential Funding Corp. (In re Thomas)*, 296 B.R. 374 (Bankr.D.Md.2003), following *Williams'* rationale, held that § 108(*b*) did not apply to give even a 60 day extension to a Chapter 13 debtor seeking rescission, where notice was given, as here, via an adversary complaint.

time-barred, hence, summary judgment in favor of Defendant on Plaintiff's First Claim for Relief is also appropriate on this alternative basis.[12]

*Claim Three:*

Plaintiff's Third Claim for Relief is brought under § 506 for a declaration that after nullifying Defendant's lien pursuant to 15 U.S.C. 1635(b), [TILA rescission], the court should disallow the lien, and order the refinance proceeds turned over to Plaintiff. Defendant has again moved for summary judgment. This claim is dependent on Plaintiff's rescission claim, which as discussed above should be dismissed.

*Claim Four:*

Plaintiff's Fourth Claim for Relief is an objection under § 502 to Defendant's secured claim for $59,112.47, objecting to both its secured status (based on TILA rescission) and the reasonableness of Defendant's fees (to be measured by quantum meruit post-rescission). Defendant has moved for summary judgment.

As to the claim's secured status, this claim as pled, is dependent on Plaintiff's claim for rescission. As such, summary judgment should be granted in Defendant's favor.

As to the reasonableness of the fees, Defendant first argues that there is no evidence attacking the validity of the contract between Debtor and Defendant, thus resort to quantum meruit is inappropriate (as that doctrine presupposes the lack of an enforceable contract). Next, he contends Plaintiff has adduced no evidence rebutting the prima facie validity of the proof of claim. He argues that he provided services to Debtor pursuant to their valid written contract at the agreed hourly rate; the contract is clear and unambiguous on its face; and Debtor was obligated to pay for the services as agreed. Plaintiff does not contest (except for his claimed rescission) the enforceability of the contract between Debtor and Defendant.

Even with an enforceable contract, however, the Bankruptcy Code, through § 502(b)(4)[13] overlays state law, and requires (even as to fees not connected to the bankruptcy), that all prepetition fees charged by an attorney for debtor be reasonable. *See,* 4 Collier on Bankruptcy, ¶ 502.03(5)(b) (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2003); *Yermakov v. Fitzsimmons (In re Yermakov),* 718 F.2d 1465 (9th Cir.1983); *Landsing Diversified Properties–II v. First National Bank (In re Western Real Estate Fund, Inc.),* 922 F.2d 592 (10th Cir.1991). Thus, the reasonableness of Defendant's fees is before the court. Debtor's affidavit, particularly at ¶¶ 5,6 and 9–12,[14] raises a gen-

---

**12.** Given the court's conclusion that Defendant is not a "creditor" under TILA, and in any event, the rescission claim is time-barred, the court will not consider Defendant's other defenses to Plaintiff's First Claim for Relief.

**13.** Section 502(b)(4) provides as follows:

Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services.

**14.** In the above-cited paragraphs of her affidavit, Debtor states the following: 1) she would never had signed the note and trust deed if she had known that Defendant's fees would climb anywhere near $20,000, "let alone what he is claiming now"; 2) Defendant reassured her when she signed the note and trust deed that the fees would "never get anywhere near" $20,000; 3) up through January 11, 1999, Defendant repeatedly called her to go over material which Debtor thought

uine issue of fact regarding the fees.[15] As such, summary judgment as to the reasonableness of Defendant's fees should be denied.

### Plaintiff's Motion to Amend, and Cross Motion for Summary Judgment:

Plaintiff has cross moved for summary judgment, claiming Defendant's lien should at least be limited to $20,000 + 10% simple interest under the language in the note and trust deed.

Defendant notes this claim has not been pled, and argues that because Plaintiff knew about this theory as early as December, 2001 (when he raised it in defense of Defendant's first motion for relief from stay), he should not be allowed to amend to add it now. Plaintiff contends the amendment should be allowed, as Defendant has been on notice that this theory was extant and has not been prejudiced.

■■■■ The court has discretion to consider Plaintiff's request in his cross motion as a motion to amend the complaint under FRCP 15(a), made applicable by FRBP 7015. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1053 n. 68 (9th Cir.1982). On the merits of the motion to amend, the court is to keep in mind the strong policy in favor of allowing amendment, and is to consider four (4) factors: bad faith, undue delay, prejudice to the opposing party, and the futility of amendment, *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994), bearing in mind that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. International Assoc. of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir.1986). The court also may consider whether the plaintiff has previously amended the complaint. *Royal Ins. Co. of America v. Southwest Marine*, 194 F.3d 1009, 1016 n. 9 (9th Cir.1999).

■■■■ The record reflects that Plaintiff knew about the subject claim since this adversary proceeding's inception. Defendant, however, has not argued prejudice or bad faith; the complaint has not previously been amended; and amendment would not be futile. As to delay, the complaint was filed on October 4, 2002. Plaintiff's desire to amend was implied in Plaintiff's cross-motion for summary judgment filed on December 27, 2002, and explicit in Plaintiff's reply filed on January 24, 2003, less than

---

they had already covered during previous office visits, and that each office visit seemed to take longer than necessary to obtain the information he sought from her; 4) by late Spring/Summer 1999 she grew dissatisfied with Defendant's representation, and that during this time, Defendant would never return her calls and was always making excuses for his lack of contact; 5) by fall, 1999, she was most unhappy with Defendant's representation, and "even felt like he was working together with Frank [debtor's ex-husband] and his attorney instead of representing me"; and finally, 6) the terms of a proposed settlement surprised and angered her, and that eventually she became so upset with Defendant's overall lack of communication and the above-referenced settlement's terms, that she fired him.

Defendant in his reply memorandum moves to strike the above-referenced portions of Debtor's affidavit as being in violation of the "parol evidence" rule as to the construction of the note and trust deed, which he claims are unambiguous. However, in this context, the affidavit is not being used to interpret the note and trust deed, but rather to express dissatisfaction at the services Defendant rendered. This goes to the reasonableness of the fees. Further, as discussed below, even if the affidavit's statements were used to interpret the note and trust deed, they are admissible under California law. See fn. 18 (infra.) As such, the motion to strike will be denied.

**15.** As noted by Plaintiff, these statements also raise issues as to defendant's credibility.

four months after the complaint was filed. On balance, the factors favor allowing amendment.[16]

■ Plaintiff's cross motion for summary judgment is based on the language of the note and trust deed. As referenced above, the note gave Debtor ninety (90) days from January 11, 1999, to pay $20,000 at 10% interest from November 1, 1998, payable in accordance with the Attorney Client Agreement dated August 13, 1998. The note further provides:

> It is understood that although this note is for the sum of $20,000, the actual amount of indebtedness shall not be greater than the actual amount of Attorney fees and Costs incurred as set forth in Obligor's monthly statement of account.
>
> In the event said statement exceeds the sum of $20,000, this note shall be adjusted to cover said amount accordingly.

The trust deed gives a lien on the marital residence to secure, among other things:

> Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $20000.00 executed by Trustor in favor of Beneficiary or order [and]... Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

Plaintiff argues that because the trust deed only references a $20,000 note, that is all the debt it can secure. Defendant asks the court to construe the note and trust deed together and find the trust deed secures all sums advanced under the note.

■ Under California law, "a note and a deed of trust, although two instruments, form parts of one transaction and must be read and construed together." *Kerivan v. Title Ins. and Trust Co.*, 147 Cal.App.3d 225, 230, 195 Cal.Rptr. 53, 56 (2nd Dist. 1983). The trust deed references a note for $20,000. However, at least by its terms, the note's principal was not static at $20,000, rather it provided: "[i]n the event said statement exceeds the sum of $20,000, this note shall be adjusted to cover said amount accordingly."[17] This creates an ambiguity (two reasonable interpretations) as to whether all sums owing under the note would be secured, or simply $20,000 of such (plus interest).[18] In any event, the

---

**16.** Defendant also argues this new claim has been abandoned, which Plaintiff disputes. Defendant has submitted his counsel, Carolyn Wade's affidavit, stating Plaintiff raised this issue in defense to Defendant's first motion for relief from stay filed in December 2001, and that in the course of defending that motion, Plaintiff stipulated that the trust deed's advance clause was enforceable, the inference being the trust deed covered all sums owed. Douglas Schultz, Plaintiff's then counsel, has submitted an affidavit denying any such stipulation. Thus, there is a genuine material issue of fact as to the "abandonment" defense.

**17.** Conversely, if the fees were less than $20,000, only the lesser amount would be secured.

**18.** Under California law, as recently pronounced in *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944, 955, 135 Cal.Rptr.2d 505, 513–514 (4th Dist.2003):

> The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. The words of a contract are to be understood in their ordinary and popular sense.
>
> Extrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible. If the trial court decides, after receiving the extrinsic evidence, the language of the contract is reasonably sus-

court can look to extrinsic evidence to determine if the interpretations are reasonable, even if the documents appear unambiguous. *Newport Beach Country Club, supra.*

Debtor's affidavit states she would not have executed the note and trust deed had she thought fees would exceed $20,000, while Defendant's declaration states it was the parties' understanding that all sums due would be secured. This creates a material issue of fact as to the parties' intent, as such Plaintiff's cross motion should be denied.

### Conclusion

Defendant's motion for summary judgment as to claims One through Three should be granted, and those claims dismissed. Defendant's motion as to claim Four should be granted insofar as Plaintiff asserts the voidability of the lien based on his right to rescind under TILA. It should be denied as to the reasonableness of Defendant's fees, hence, the amount of Defendant's claim.

Plaintiff's motion to amend to add a claim that Defendant's lien should be limited to $20,000 plus interest should be granted, and the pleadings deemed amended accordingly. His motion for summary judgment on that claim should be denied.

The above constitutes my findings and conclusions under FRBP 7052. An order consistent herewith will be entered.

ceptible to the interpretation urged, the evidence is admitted to aid in interpreting the contract. Thus, the test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.
*Id.* (internal citations and quotations omitted).