**ORDERED PUBLISHED**

FILED

SEP 20 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-10-1466-KiSaPa |
| ONTSON FITZGERALD PLACIDE and LORI ANN PLACIDE, | Bk. No.   LA 10-36656 AA |
| Debtors. | |
| THE MARGULIES LAW FIRM, APLC, | |
| Appellant, | |
| v. | **O P I N I O N** |
| ONTSON FITZGERALD PLACIDE; LORI ANN PLACIDE, | |
| Appellees. | |

Argued and Submitted on May 13, 2011,
at Pasadena, California

Filed - September 20, 2011
Ordered Published - October 5, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Alan M. Ahart, Bankruptcy Judge, Presiding

Appearances:    Craig G. Margulies argued for appellant The Margulies Law Firm, APLC;
Eric M. Sasahara argued for appellees Ontson Fitzgerald Placide and Lori Ann Placide.

Before:  KIRSCHER, SARGIS[1] and PAPPAS, Bankruptcy Judges.

_____
    [1] Hon. Ronald H. Sargis, Bankruptcy Judge for the Eastern District of California, sitting by designation.

KIRSCHER, Bankruptcy Judge:

Appellant, The Margulies Law Firm, APLC (f/k/a Law Offices of Craig G. Margulies, APLC) ("MLF"), appeals an order from the bankruptcy court sustaining appellees' objection to MLF's claim for prepetition attorney's fees and costs MLF incurred representing appellees against chapter 7[2] debtor, Lamar Edison ("Edison"). The bankruptcy court found that MLF's claim for $80,869.33 was unreasonable, and it disallowed the claim in its entirety. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.   Placides's suit against Edison.**

In 2004, appellees, Ontson F. Placide and Lori A. Placide ("Placides"), entered into a contract with Edison for construction and remodeling services on their home. The relationship soured, and in February 2005 Placides sued Edison in state court for breach of contract and various other claims. Before trial, Placides entered into a stipulation with Edison, agreeing to settle the matter for $82,000, plus attorney's fees and costs should any be incurred to enforce the stipulation. Edison soon defaulted under the stipulation, which entitled Placides to a judgment of $82,000 plus attorney's fees and/or costs. Edison filed a chapter 7 petition for relief on November 21, 2006, before the judgment could be entered.

In February 2007, Placides retained MLF to file an adversary

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

proceeding against Edison. According to the terms of the Engagement Letter, dated and signed by Placides on February 13, 2007, Placides agreed to pay all of MLF's fees and costs, regardless of the outcome of the case. Craig Margulies ("Margulies"), the firm's sole attorney, charged an hourly rate of $300. Payments were due upon receipt of invoice and, in the absence of any written objection by Placides within seven days of receipt, Placides were deemed to have accepted and acknowledged the invoice as correct for the relevant period. The Engagement Letter states that it consists of the "entire agreement" between Placides and MLF.

In the adversary complaint filed on February 16, 2007, Placides sought to except their debt from Edison's discharge under sections 523(a)(2)(A), (a)(4), and (a)(6), and to deny Edison's discharge pursuant to sections 727(a)(2), (a)(4)(A), (a)(5), and (a)(7). In connection with their claims against Edison, Placides also sued Edison's non-debtor spouse, Viola, in order to attempt to recover an alleged fraudulent transfer of Edison's interest in their marital residence, which Placides believed had significant equity.[3] As Edison's largest unsecured creditor (holding $82,000 out of the $85,128 of debt listed in Edison's Schedule F), Placides stood to gain from any recovery by the estate of the residence, subject to administrative costs and a $6,000 priority IRS claim.

[3] In a Joint Pre-Trial Stipulation filed in December 2007, Edison and Viola, who were still married at the time of the adversary proceeding, admitted at least $300,000 in equity existed in the residence, which was purchased in 1972 with community funds. This stipulation was included as an exhibit to MLF's opposition to Placides's objection to MLF's proof of claim.

Timothy Yoo, the chapter 7 trustee in Edison's case ("Trustee"), was named as a co-plaintiff in the adversary proceeding. Trustee later filed a First Amended Application to employ MLF as his special bankruptcy counsel in the Edison/Viola adversary proceeding. The application stated that because the estate had no assets available for litigation expenses, Placides, pursuant to the Engagement Letter with MLF, would be paying all fees and costs incurred. The application also provided that MLF would receive a 40% contingency fee on all sums recovered for the estate. An order approving MLF's employment was entered on December 6, 2007. Placides were served a copy of the employment order.

A two-day trial against Edison and Viola took place on February 7 and 8, 2008.[4] The bankruptcy court entered a judgment on May 9, 2008. Plaintiffs succeeded in denying Edison's discharge under sections 727(a)(4)(A) and (D), including Placides's debt of $82,000. However, the court found that the residence had been transmuted from community property to Viola's separate property. Hence, the estate recovered nothing. Since Edison was denied a discharge, Placides opted to not pursue their nondischargeability claims against him.

For the suit against Edison and Viola, MLF's fees and costs totaled $124,161.80 ($106,631.25 in fees and $17,530.55 in costs). The vast majority of the fees were incurred by February 2008, which includes MLF's time billed for trial. Until January 2008, Placides had made regular payments to MLF totaling approximately

---

[4] The presiding bankruptcy judge bifurcated the trial and only the 727 action went forward.

$39,000.  After that, Placides's payments to MLF became sporadic. Between March and July 2008, Placides made four $5,000 payments by check to MLF, but they later stopped payment on two of the checks. All payments ceased after July 2008.  Ultimately, Placides paid MLF $49,123.96.[5]  About 18 months later, in January 2010, MLF sent Placides a final demand letter attempting to collect the outstanding balance, to no avail.  In May 2010, MLF sued Placides in state court for the unpaid fees and costs.  MLF incurred an additional $6,075.00 in attorney's fees and costs for prosecuting the collection action.  MLF's collection action was stayed once Placides filed a chapter 13 petition for relief on June 29, 2010.

**B.    MLF's proof of claim.**

MLF timely filed its proof of claim in Placides's bankruptcy case for the unpaid attorney's fees and costs.  MLF asserted an unsecured claim for $80,869.33 ($65,061.80 in principal, plus $9,732.53 interest to date, plus $6,075.00 in attorney's fees and costs incurred for the collection action).

Placides objected to MLF's claim in its entirety as grossly unreasonable under section 502(b)(4).  Specifically, Placides contended that MLF's total billed fees and costs of $124,161.80 were grossly disproportionate to their potential $82,000 recovery from Edison, and MLF was not entitled to more than one third, or $27,000.  As such, contended Placides, the $49,000 already paid to MLF was more than sufficient to satisfy its claim.  While Placides did not contest the enforceability of the Engagement Letter, they

---

[5] In their objection to MLF's proof of claim, Placides asserted they paid MLF approximately $60,000.  Placides concede on appeal that they paid only $49,123.96.

claimed that Margulies orally represented to them that Trustee would absorb one-half of MLF's attorney's fees and costs. Placides also asserted that, just before trial, Margulies informed them that trial could cost them up to approximately $15,000, at which point they agreed to proceed. Placides further argued that MLF's collection action fees were not recoverable under California law, and that MLF's interest figure was unsupported.

MLF opposed Placides's objection, arguing that its claim should be allowed in its entirety. According to MLF, Placides knew Edison's estate had no assets, which is why they pursued Viola and the residence; it was the only way they could get paid. Yet, despite the risks, Placides wished to continue. MLF rejected Placides's allegation that Trustee was liable for half of the fees and costs. Per the terms of the Engagement Letter, Placides knew they were liable for all fees and costs whether or not the residence became an asset of the estate. MLF further contended that it properly scaled its fees; they were not extravagant given the complexity of the adversary with two defendants and difficult family law issues. Plus, MLF obtained a judgment for Placides. Finally, MLF argued that it was entitled to attorney's fees incurred in the collection action under CAL. CIV. CODE § 1717.

In response, Placides argued that their lack of objection to MLF's fees and costs incurred in Edison's adversary, or the fact that MLF succeeded in representing them, was irrelevant to the issue of whether MLF's claim was unreasonable under section 502(b)(4). Placides admitted to accepting the risks of litigation, but argued that this did not give MLF an unlimited license to bill them with unreasonable attorney's fees and costs.

-6-

Placides further argued that, whether or not Trustee was to pay half of the fees and costs, no reasonable party would agree to bear all of the costs of litigation on behalf of two parties.

The bankruptcy court held a hearing on Placides's claim objection on October 28, 2010. MLF argued that its hourly rate of $300, which it never raised during the 18 months it represented Placides, was reasonable, and Placides never objected to any invoices. MLF further noted that it would never have represented Trustee and Edison's estate but for the fact that it was the source of funds for Placides; the residence had over $100,000[6] in equity, which MLF contended would have paid Placides's $82,000 claim against Edison in full. The court inquired whether all or only Edison's half of the equity was available, upon which MLF responded that if the residence had been deemed community property, all of the equity would have been available for Edison's estate as he did not claim an exemption. MLF clarified that the contingency arrangement was with Trustee only, if the residence were recovered, but otherwise Placides agreed to pay, and were responsible for, all attorney's fees and costs.

In the bankruptcy court's opinion, Placides's silence as to MLF's fees was irrelevant to whether MLF's fees were reasonable under section 502(b)(4):

> That's the question. It's not what the Debtors did or did not do. . . .[Y]ou are in a situation where under 502(b)(4), it's sort of -- it's almost like a strict scrutiny standard . . . . It's almost like looking at what an insider would charge the party, the client. So

---

[6] Of course, the Joint Pre-Trial Stipulation indicated that $300,000 of equity potentially existed, assuming plaintiffs were successful in recovering the residence as part of Edison's estate. See fn. 3.

-7-

that is your problem.  That is your burden.

Hr'g Tr. (Oct. 28, 2010) at 7:15-21.

MLF then argued that the cases cited by Placides, where the fees were found to be unreasonable, were cases in which debtor's counsel was employed under sections 327 or 330, and counsel was severely depleting estate funds, which was not the case here.  The bankruptcy court rejected this argument and sustained Placides's objection to MLF's claim:

> . . . [T]he difficulty you have here now is that the only way you [were] ever going to recover anything close to . . . the [$]82,000, was to get that real property brought back into the estate in some fashion, and sold and enough paid off -- net . . . of all the expenses of sale . . . and the priority claims ahead of your client, including the trustee['s] expenses, as well as your attorney's fees for the trustee . . . .  Only if -- only if all those things got paid, there was enough there to pay those and your clients.  That's the only way.  Otherwise, this was a losing proposition from the get go, I'm afraid.  That's your problem here.  That's your difficulty.

Id. at 8:18-9:8.

> Because at most, if you didn't get that -- you got really, at most, what you could otherwise get, essentially.  You objected to the discharge.  Well, I would say, okay, that's fine, you did it.  But, it doesn't result in any dollar recovery to your clients whatsoever.  Nothing.  Zero.  Where are they?  They are just kind of back where they started.  So they still have a claim that continues to exist against Mr. Edison.  But, they have not recovered anything.  Nothing.  No dollars.
>
> That is the problem.  That is why you are going to lose here this morning . . . .  You have been paid the [$]49,000, it is at least [$]49,000.  . . .  I think under the facts, I think that is reasonable.

Id. at 9:10-10:1.

> . . . .
>
> And you just can't sustain your burden here to show that you are entitled to anything more, based on these facts.  Based on what the Debtors had -- the prospect of winning

it from the get go.

Id. at 10:15-18.

. . . .

So, I am going to find that [the claim] is unreasonable to the extent you want any more monies than what you're [sic] firm has been paid, so I am going to sustain the objection.

Id. at 12:1-3.

In response to the court's decision, MLF reiterated that the equity in the residence was significant and would have paid Placides in full. The court paused and asked where in the record was the evidence to prove this fact. MLF responded that it was in the complaint, which was attached as an exhibit to MLF's opposition. The court rejected an allegation in a complaint as evidence; it needed to know the value of the residence, the existing liens, and the amount of administrative expenses involved.

MLF then inquired if the court was holding that attorneys should never be entitled to fees when representing creditors in discharge actions because all that can be recovered is a judgment, which the court valued as worthless and a "pyrrhic victory." The court rejected MLF's assumption and expressed its understanding of MLF's plight, but stated that attorneys in such actions must assume the risk of not getting paid.

The bankruptcy court entered an order on November 5, 2010, sustaining Placides's objection to MLF's claim for $80,869.33 and disallowing it in its entirety pursuant to section 502(b)(4). This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

-9-

§§ 1334 and 157(b)(2)(B). We have jurisdiction pursuant to 28 U.S.C. § 158.

# III. ISSUES

1. Was the bankruptcy court correct to apply section 502(b)(4) to MLF's claim and impose a reasonableness standard to its fees?

2. Did the bankruptcy court err by shifting the burden to MLF to prove the validity of its claim?

3. Did the bankruptcy court abuse its discretion in disallowing as unreasonable MLF's $80,869.33 claim for prepetition attorney's fees?

# IV. STANDARDS OF REVIEW

The proper interpretations of statutes and rules are legal questions that we review de novo. Heath v. Am. Express Travel Related Servs. Co., Inc. (In re Heath), 331 B.R. 424, 428 (9th Cir. BAP 2005). Whether compliance with a given statute or rule has been established is generally a question of fact, which we review for clear error. Id.

The bankruptcy court's allocation of the burden of proof is a conclusion of law we review de novo. People's Ins. Co. of China v. M/V Damodar Tanabe, 903 F.2d 675, 682 (9th Cir. 1990).

We review an order disallowing as unreasonable claims for prepetition attorney's fees or insider payments under section 502(b)(4) for an abuse of discretion.[7] To determine whether the bankruptcy court abused its discretion, we conduct a two-step

---

[7] We, like the Panel in Segovia v. Bach Constr., Inc. (In re Segovia), 2008 WL 8462967, at *4 n.16 (9th Cir. BAP Oct. 22, 2008), could not locate a standard of review for orders disallowing as unreasonable claims for prepetition attorney's fees or insider payments under section 502(b)(4). However, we agree that an abuse of discretion standard would apply.

-10-

inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## V. DISCUSSION

**A.   MLF's claim for prepetition attorney's fees was subject to section 502(b)(4).**

A proof of claim is deemed allowed and constitutes prima facie evidence of the claim's validity and amount unless a party in interest objects.  Section 502(a); Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell), 223 F.3d 1035, 1039 (9th Cir. 2000); Rule 3001(f).  Placides never disputed MLF's right to attorney's fees and costs under the Engagement Letter.  "Because a pre-bankruptcy contractual obligation of a debtor to an attorney is like any other contract claim against the estate, the attorney can assert the claim in bankruptcy." Yermakov v. Fitzsimmons (In re Yermakov), 718 F.2d 1465, 1470 (9th Cir. 1983).  While state law governs MLF's rights under the Engagement Letter, bankruptcy law governs the allowance of MLF's claim against Placides's estate.  See Butner v. United States, 440 U.S. 48, 54-55 (1979).

MLF's claim for attorney's fees and costs may be allowed only to the extent they are reasonable as determined under federal law. Landsing Diversified Props.–II v. First Nat'l Bank & Trust Co. of Tulsa (In re W. Real Estate Fund, Inc.), 922 F.2d 592, 597 (10th

-11-

Cir. 1991). Section 502(b)(4) provides that a prepetition claim for services performed by an attorney or insider of the debtor shall be disallowed to the extent the claim exceeds the reasonable value of the services provided. Thus, "the excess amount of the claim beyond such reasonable value fixed by the court is simply disallowed and may not, therefore, share in the distribution of the debtor's assets." 4 COLLIER ON BANKRUPTCY ¶ 502.03[5][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009).

On appeal, MLF contends that a reasonableness standard does not apply to its fees, but rather the contract amount controls. Specifically, MLF argues that a reasonableness standard should not apply because it provided services to Placides almost two years prepetition, the services had nothing to do with Placides's bankruptcy, and Placides represented that they had every intention of paying. Like the bankruptcy court, we reject this argument.

Contrary to MLF's contention, section 502(b)(4) covers unpaid claims for services of an attorney "whether or not the services were rendered in contemplation of the filing of the petition or, indeed, whether those services had even anything to do with bankruptcy or the debtor's financial affairs." Id. at ¶ 502.03[5][c][I]; In re Gutierrez, 309 B.R. 488, 493 (Bankr. W.D. Tex. 2004) (a reasonableness standard under "[s]ection 502(b)(4) applies to all claims for attorneys' fees owed by a debtor prior to the filing of the case in which the claim is made, whether that claim be for representing the debtor in a prior bankruptcy case, or for representing the debtor in any other capacity (personal injury, state court litigation, probate matters, tax advice, etc. etc.") (emphasis in original); Sticka v. Geller (In re Stratton),

-12-

299 B.R. 616, 623 (Bankr. D. Or. 2003) (same). Thus, MLF's claim for prepetition attorney's fees falls squarely under section 502(b)(4) and is subject to a reasonableness determination, regardless of the amount to which MLF is entitled under the Engagement Letter.

**B.    The bankruptcy court properly shifted the burden of proof to MLF.**

MLF contends that the bankruptcy court erred by improperly shifting the burden to MLF to support the validity of its claim because Placides merely lodged an objection without providing any evidence to defeat it. We disagree.

To defeat a prima facie valid claim under section 502, "the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" In re Lundell, 223 F.3d at 1039 (quoting Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991)). "'If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'" Id. (citations omitted). "The ultimate burden of persuasion remains at all times upon the claimant." Id.

Under section 502(b)(4), the claimant attorney or insider bears the burden of proof on the question of reasonableness of compensation for services. In re Siller, 427 B.R. 872, 881 (Bankr. E.D. Cal. 2010); In re Boulder Crossroads, LLC, 2010 WL 4924745, at *13 (Bankr. W.D. Tex. Dec. 1, 2010); Faulkner v. Canada (In re Heritage Org., LLC), 2006 WL 6508182, at *8 (Bankr

-13-

N.D. Tex. Jan. 6, 2006) (citing cases). Mr. Placide, in his declaration in support of Placides's objection to MLF's claim, testified that Margulies had represented that the attorney's fees and costs in Edison's adversary proceeding would be distributed equally between Placides and Trustee. Trustee, as near as we can tell, has not affirmed or disputed this fact. Further, Placides put at issue the reasonableness of MLF's fees, which were significantly in excess of the amount of Placides's maximum possible recovery of $82,000. These facts provided probative evidence to negate the legal sufficiency of MLF's claim, or at least sufficiently question the reasonableness of MLF's fees. Accordingly, the bankruptcy court did not impermissibly shift the burden of proof to MLF.

**C.    Determination of Reasonableness of Attorney's Fees.**

The reasonableness of attorney's fees under section 502(b)(4) is a question of federal law. Schoenmann v. Bach Constr., Inc. (In re Segovia), 387 B.R. 773, 779 (Bankr. N.D. Cal. 2008), aff'd, 2008 WL 8462967, at *6 (9th Cir. BAP Oct. 22, 2008); In re W. Real Estate Fund, 922 F.2d at 597; In re Siller, 427 B.R. at 880. Bankruptcy courts have wide discretion in determining the reasonableness of fees, and the appellate court will not overturn the bankruptcy court's decision unless it abused its discretion. Law Offices of David A. Boone v. Derham-Burk (In re Eliapo), 468 F.3d 592, 596 (9th Cir. 2006).

In the Ninth Circuit, the primary method used to determine a reasonable fee in bankruptcy cases is to calculate the lodestar. In re Yermakov, 718 F.2d at 1471. A court computes the lodestar by multiplying the number of hours reasonably expended by a

-14-

reasonable hourly rate. Id. However, the Ninth Circuit and this Panel have made it clear that a court may depart from the lodestar method where appropriate. See Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc., 924 F.2d 955, 960, 961 (9th Cir. 1991) (lodestar approach not mandated in all cases and court may employ alternative approaches where appropriate); Digesti & Peck v. Kitchen Factors, Inc. (In re Kitchen Factors, Inc.), 143 B.R. 560, 562 (9th Cir. BAP 1992) (lodestar method is primary approach but is not exclusive method).

In Kitchen Factors, the Panel held that a court may abandon the lodestar approach in determining reasonable fees where the "time spent by counsel is not helpful because it is grossly disproportionate to the amounts at stake." 143 B.R. at 562. "'Absent unusual circumstances, an attorney must scale his or her fee at least to the reasonably expected recovery.'" Id. (quoting Puget Sound Plywood, 924 F.2d at 961). "A claim for attorneys fees is unreasonable under federal law to the extent the attorney seeks fees that are disproportionate to the likely recovery." Segovia, 387 B.R. at 779.

We recognize that Puget Sound Plywood and Kitchen Factors were dealing with reasonableness of attorney's fees under section 330. We also recognize the difference between being an attorney employed by the estate and being an attorney employed by a non-debtor private client. Under the former, counsel is seeking payment from the estate; under the latter, counsel is seeking payment from a private client. If a private client wishes to waste his own money pursuing litigation which may not be cost-effective, that is his choice. See In re Kitchen Factors,

-15-

143 B.R. at 562-63. However, once that client files a bankruptcy petition, counsel's claim for fees is limited to a reasonable amount, in the same fashion as the claim for an estate professional under section 330. Therefore, we believe the same reasonableness standard set forth in section 330 should govern an attorney's claim for fees under 502(b)(4). See In re Segovia, 387 B.R. at 779, aff'd, 2008 WL 8462967, at *6 (reasoning same); In re Nelson, 206 B.R. 869, 882 (Bankr. N.D. Ohio 1997) (same).

Although not expressly stated, the bankruptcy court departed from the lodestar method and employed a method more like the one set forth in Puget Sound Plywood and Kitchen Factors. It focused on the $82,000 at stake for Placides and the approximate $125,000-plus MLF billed Placides in its effort to recover that $82,000. To the extent MLF argues that the bankruptcy court erred in choosing an alternative method to determine the reasonableness of its fee, we disagree. Because of the disproportionate nature of MLF's fees to Placides's reasonably expected recovery, the court was free to depart from lodestar and use an alternative method. In re Kitchen Factors, 143 B.R. at 562; Puget Sound Plywood, 924 F.2d at 961.

In its reasonableness determination, the bankruptcy court found that, prepetition, Placides paid MLF approximately $49,000. It further found that $49,000 was the reasonable value of MLF's services for representing Placides in pursuing their $82,000 claim against Edison, considering that Placides had no prospect of recovering anything from Edison unless they could get the residence into the estate, and, even then, insufficient equity (net of costs) existed to pay Placides's $82,000 claim in full.

-16-

The court considered Placides's preserved $82,000 judgment against Edison to be valueless because they had not recovered any money. Ultimately, the court found MLF's claim for an additional $80,869.33 in prepetition attorney's fees and costs was unreasonable, and it disallowed MLF's claim in its entirety.

MLF contends that its fees were reasonable and proper given the complexity of the adversary, and that it exercised appropriate billing judgment. MLF asserts that Placides wanted to proceed against Edison and Viola because they had a significant chance, if not 100%, of recovering on their $82,000 claim if the estate recovered the residence. Therefore, MLF contends that its claim should be allowed in its entirety, particularly since Placides never objected to MLF's fees throughout the course of the litigation. In sum, MLF contends that the bankruptcy court erred by awarding MLF only $49,000, almost $18,000 of which was attributable to costs, for 375 hours of work that resulted in success for Placides. MLF also contends that the bankruptcy court did not know what amount Placides had paid to MLF, what amount remained due, and what sums were only reimbursements for costs MLF advanced on behalf of Placides; thus, it could not make a reasonableness determination.

We reject MLF's contention that the bankruptcy court was unable to make a reasonableness determination because it had insufficient information about the accounting of the fees and costs. At the hearing, the court correctly found that Placides had paid MLF approximately $49,000. MLF clearly stated in its opposition to Placides's claim objection what amount remained unpaid, and Margulies further stated at the hearing how the

-17-

$49,000 was allocated between costs and fees. The record reflects that the bankruptcy court knew exactly what amount had been paid, how much was outstanding, and that it considered Margulies' statement regarding the allocation of the $49,000. As such, it was able to make a reasonableness determination. It simply rejected MLF's argument.

We also reject, as did the bankruptcy court, MLF's contention that Placides's lack of prepetition objection to MLF's fees means that its claim should be allowed in its entirety. As we stated above, regardless of what MLF may be entitled to under the Engagement Letter, its fees are subject to a reasonableness determination under section 502(b)(4). In re W. Real Estate Fund, Inc., 922 F.2d at 597; In re Segovia, 387 B.R. at 779, aff'd, 2008 WL 8462967; In re Siller, 427 B.R. at 880.

However, we disagree with the bankruptcy court that Placides's suit against Edison and Viola was a "losing proposition from the get go." In the Joint Pre-Trial Stipulation filed in December 2007, Edison and Viola, who were still married at the time, admitted at least $300,000 in equity existed in the residence, which was purchased in 1972 with community funds. The only encumbrance on the residence was a mortgage for $104,000. Placides were Edison's largest unsecured creditor holding 96% of the unsecured debt. Edison had a priority IRS tax claim for about $6,000. MLF included the Joint Pre-Trial Stipulation in its opposition to Placides's claim objection.

Given the above facts, at the time Placides and Trustee filed suit against Edison and Viola the case looked very promising. Had the estate recovered the residence, Placides's claim for $82,000

-18-

against Edison, plus any attorney's fees and costs preserved in the judgment, likely would have been satisfied. Unfortunately, MLF never articulated in its opposition brief how much equity was in the residence, but stated merely that it had "significant" equity. For reasons unknown, Margulies stated at the claim objection hearing that the residence had only $100,000 in equity.[8] When asked where this evidence was in the record, Margulies erroneously stated that it was in the adversary complaint, which the court correctly rejected as evidence.

The bankruptcy court was faced with a factual issue of how much equity existed in the residence, $100,000 or $300,000, in determining the reasonableness of MLF's attorney's fees. Based on the evidence presented to the bankruptcy court on this matter, considering the reasonableness of the fees in connection with a potential $100,000 recovery by Placides was not clear error. Even if Placides had been paid in full, MLF still failed to scale its fees to something more in proportion with what Placides could reasonably recover. In re Kitchen Factors, 143 B.R. at 562; Puget Sound Plywood, 924 F.2d at 961. Therefore, the bankruptcy court did not clearly err in finding that $125,000-plus in attorney's fees and costs incurred for a recovery that could never have been more than $82,000 was unreasonable, and that $49,000 was a reasonable fee.

## VI. CONCLUSION

No one disputes the excellent work by MLF, and perhaps we

---

[8] Margulies asserted to the Panel at oral argument that $300,000 equity existed in the residence, and the evidence to support this fact could be found in the Joint Pre-Trial Stipulation.

-19-

each individually would have arrived at a different figure and allowed MLF's claim in part. However, given the wide discretion afforded bankruptcy courts in determining reasonableness of prepetition attorney's fees under section 502(b)(4), we cannot say that the court here abused its discretion in disallowing as unreasonable MLF's claim for $80,869.33. In re Eliapo, 468 F.3d at 596. Accordingly, we AFFIRM.