

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>STEPHEN WILLIAM SLOAN,<br>      Debtor. | BAP No. EC-22-1119-BSG<br><br>Bk. No. 20-10809 |
| STEPHEN WILLIAM SLOAN,<br>      Appellant,<br>v.<br>SANDTON CREDIT SOLUTIONS<br>MASTER FUND IV,<br>      Appellee. | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
René Lastreto II, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Appellant Stephen Sloan appeals an order overruling his objection to the claim filed by appellee and secured creditor, Sandton Credit Solutions Master Fund IV ("Sandton"). Specifically, Sloan challenged Sandton's claim for postpetition interest and late charges, arguing that Sandton was not entitled to them because its claim was undersecured. We conclude that the

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

bankruptcy court did not err in determining that Sloan was bound by the parties' earlier agreement as to the amount of Sandton's claim and for the accrual of postpetition interest and late charges, and therefore Sandton's claim would be allowed in full. Accordingly, we AFFIRM.

## FACTS

Sloan is a farmer and businessman and has been involved in the sale and transfer of water for agricultural purposes in California since the 1980s. He is the managing member and owner of 4-S Ranch Partners, LLC ("4-S"). Sandton is an investor in alternative credit opportunities, including providing rescue finance to troubled companies.

Sloan owned agricultural property known as Hamburg Ranch, which consists of 668 acres of almond and pistachio trees. 4-S owned 5,300 acres of land ("4-S Property"), which it purchased for the purpose of developing a water project. In 2017, 4-S obtained a loan from Sandton for $33,075,887.92 to refinance the debt owed to the then-mortgage lender. The Sandton loan was secured by deeds of trust on both Hamburg Ranch and the 4-S Property. Sloan personally guaranteed 4-S's debt to Sandton.

After 4-S defaulted on the Sandton loan in 2018 and the parties were unable to agree upon any further forbearance agreements, Sandton scheduled foreclosure sales for Hamburg Ranch and the 4-S Property for March 4, 2020. Sandton's appraisals around that time for Hamburg Ranch and the 4-S Property valued the properties at $12.5 and $14.985 million, respectively.

To prevent the foreclosure sales, on March 2, 2020, Sloan filed two

2

chapter 11[1] bankruptcy cases, one individually and one on behalf of 4-S. Sloan valued Hamburg Ranch at $16 million; he valued the 4-S Property at $500 million.

Sandton filed proofs of claim in each case. Each claim asserted that the debt owed was $57,264,545.53 and was partially secured; partially secured by Hamburg Ranch in Sloan's case, and partially secured by Hamburg Ranch and the 4-S Property in 4-S's case. In Sloan's case, the amount remaining unsecured was $44,744,545.53, based on Sandton's appraisal for that property at $12.5 million. In 4-S's case, the amount remaining unsecured was $29,759,545.53, based on Sandton's appraisal for Hamburg Ranch and the 4-S Property together at approximately $27.5 million.

Sandton filed motions for relief from stay. It argued that Sloan had no equity in Hamburg Ranch and that it was not necessary for an effective reorganization. Sandton made similar arguments as to 4-S. Sloan and 4-S opposed stay relief, arguing that Sandton was oversecured and so stay relief was not warranted. Sloan and 4-S disputed Sandton's appraisals, particularly the one for the 4-S Property. Sloan argued that its value was not in the bare land but rather the ability to monetize its water rights, which Sloan argued Sandton's appraisal failed to account for. Sloan maintained that the 4-S Property was worth $500 million, which included $200 million in water stored there. The stay relief motions were scheduled for a two-day

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

evidentiary hearing.

Just before the stay relief hearing, Sloan, 4-S, and Sandton entered into a stipulation, which the bankruptcy court approved on December 9, 2020 ("Stipulation"). If Sloan did not pay Sandton in full by March 31, 2021, Sandton would be granted relief from stay effective April 1, 2021, to proceed with its foreclosure sales. The Stipulation also provided:

> 4-S and Sloan hereby ratify that the following sums are unconditionally and absolutely owed by them, jointly and severally, to Sandton as of December 8, 2020:
>
> | | |
> |---|---:|
> | Principal | $52,036,600.41 |
> | Accrued Interest | 7,143,777.65 |
> | Accrued Default Interest | 3,048,467.95 |
> | Extension Fee | 3,000,000.00 |
> | Legal and Other Costs | 601,268.79 |
> | Accrued Late Charges | 354,645.92 |
> | Unbilled Legal | + 55,774.92 |
> | Total | $66,240,535.64 |
>
> For each additional day past December 8, 2020, an additional $31,537.33 will be due from 4-S and Sloan, jointly and severally, to Sandton.

Finally, the Stipulation provided that Sandton could pursue avoidance actions in Sloan's bankruptcy case; that Sandton's deadline to object to Sloan's discharge or the dischargeability of certain debts under §§ 523 and 727 would be extended; and that, to avoid a contested confirmation hearing, Sloan and 4-S's proposed plans of reorganization would be amended to include treatment of Sandton's claim consistent with the Stipulation.

Sloan did not sell or refinance the properties by March 31, 2021, and

Sandton foreclosed on Hamburg Ranch and the 4-S Property on April 27 and 29, 2021, respectively. Sandton purchased Hamburg Ranch with a credit bid of $10,117,970.84; it purchased the 4-S Property with a credit bid of $20,000,000. A total of $30,117,970.84 was applied to Sandton's claim. Sandton promptly filed an amended unsecured proof of claim for $40,823,797.25. 4-S's chapter 11 case was dismissed on August 10, 2021.

Sloan then proposed an amended plan of reorganization, asserting that Sandton's unsecured claim should be only $27,146,574.69, not $40,823,797.25, eliminating all accrued postpetition interest and attorney's fees since the bankruptcy filing. Sloan asserted, because the value of the collateral realized at the foreclosure sales was less than the amount owed on the claim, Sandton's claim was undersecured and not entitled to postpetition interest.

To avoid a contested confirmation hearing, Sloan and Sandton entered into a further stipulation for the amended plan:

> Sandton contests the amount of its claim stated in paragraph 3.01 of the Plan, but understands that the Plan does not fix the amount of its claim and that there will be a separate proceeding to determine the correct amount of Sandton's claim. Except for this dispute, Sandton does not otherwise contest its proposed treatment under the Plan, and with the changes made above will vote in favor of confirmation of the Plan.

Thus, while Sandton approved the amended plan, the parties acknowledged that the amount of Sandton's claim as stated in the plan was not dispositive and would be decided in a later proceeding. The bankruptcy court confirmed Sloan's amended plan on February 2, 2022.

Thereafter, Sloan filed an objection to Sandton's amended unsecured claim for $40,823,797.25, raising the same arguments he did at plan confirmation, but he now sought to disallow the claim to the extent it sought postpetition interest and late charges (he agreed to the attorney's fees). Accordingly, Sloan argued that the amount of Sandton's unsecured claim should be $27,676,147.21.

Sandton opposed the claim objection, arguing that Sloan was bound by the Stipulation in which he agreed to the amount of the claim, the accrual of postpetition interest and late charges, and the claim's treatment under a future chapter 11 plan. Sandton argued that even if the Stipulation was not a binding agreement or a judicial admission, its claim could not be deemed to be undersecured based on the sale prices of Hamburg Ranch and the 4-S Property because sale price was not the proper measure of value.

In reply, Sloan argued that the amount stated in the Stipulation was the "contractual amount owed" by him (and 4-S before the case was dismissed), not the "amount of Sandton's claim" allowed in the bankruptcy, which he argued was limited by § 506(b) to the extent the claim was undersecured. Sloan further argued that Sandton's amended claim, which stated that its claim was now completely unsecured, precluded Sandton from receiving postpetition interest. Lastly, Sloan argued that the value of Sandton's collateral should be determined as of the date of plan confirmation. Since the properties were foreclosed upon before confirmation, no further collateral existed to secure Sandton's claim. Consequently, argued Sloan, Sandton's

claim was treated as an unsecured claim and not entitled to postpetition interest.

Finding that Sloan was bound by the Stipulation, which confirmed Sandton's right to postpetition interest and late charges, the bankruptcy court overruled Sloan's claim objection and allowed Sandton's claim in the amount of $40,823,797.25. Sloan timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in overruling Sloan's claim objection with respect to Sandton's postpetition interest and late charges?

## STANDARDS OF REVIEW

Claims objection appeals can involve both legal and factual issues. We review the legal issues de novo and the factual issues for clear error. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 918 (9th Cir. BAP 2011). Whether the bankruptcy court identified and applied the correct burden of proof is a question of law we review de novo. *Margulies Law Firm v. Placide (In re Placide)*, 459 B.R. 64, 71 (9th Cir. BAP 2011). Whether the evidence sufficiently rebutted the evidentiary presumption under Rule 3001(f), however, is a question of fact reviewed for clear error. *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000) (citing *Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)*, 96 B.R. 275, 277 (9th Cir. BAP 1989)).

7

De novo review means that we review the matter anew, as if the bankruptcy court had not previously decided it. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

"We may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected, or even considered that ground." *Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1125 (9th Cir. 2014) (cleaned up).

## DISCUSSION

### A. Legal standards for claims litigation

A claim is deemed allowed absent objection from a party in interest. § 502(a). A procedurally compliant proof of claim is prima facie evidence of the validity and amount of the claim. Rule 3001(f).

> To defeat a prima facie valid claim under section 502, the objector must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The ultimate burden of persuasion remains at all times upon the claimant.

*In re Placide,* 459 B.R. at 72 (cleaned up). But if the objecting party does not rebut the presumption of prima facie validity, the claims litigation ends there, and the claim should be allowed without any further burden on the claimant

8

to demonstrate its validity. *Nations First Cap., LLC v. Decembre (In re Nations First Cap., LLC)*, BAP No. EC-19-1201-GLB, 2020 WL 3071983, at \*7 (9th Cir. BAP June 5, 2020) (citation omitted), *aff'd,* 851 F. App'x 32 (9th Cir. 2021).

**B.    The bankruptcy court did not err in overruling Sloan's claim objection with respect to Sandton's postpetition interest and late charges.**

Sloan spends much of his opening brief arguing that Sandton was not entitled to postpetition interest because its claim was undersecured. He also argues that the time for valuing Sandton's collateral was at plan confirmation or the claim objection, and since there was no collateral at either of those times because the properties had been sold, Sandton's claim was unsecured and not entitled to postpetition interest or late charges. These arguments are red herrings. Sloan was bound by the Stipulation in which he agreed that Sandton's claim was fully secured and subject to the accrual of postpetition interest and late charges. While Sloan tries to argue that he was only agreeing to the amount of the debt and not the claim, that the Stipulation provided Sandton with postpetition interest was at least an implicit admission that its claim was fully secured, and the Stipulation further provided that Sandton's claim would be treated as such in a future chapter 11 plan.

The bankruptcy court overruled Sloan's claim objection, finding that he had unequivocally agreed in the Stipulation as to the amount and treatment of Sandton's claim. Sloan agreed, as of December 8, 2020, he "unconditionally and absolutely owed" Sandton the sum of $66,240,535.64, which included postpetition interest and late charges, and that he would owe Sandton an

additional daily sum of $31,537.33 thereafter, representing the postpetition interest and late charges on the total amount owed. At the time of the Stipulation, it was unknown whether Sandton was over- or undersecured. Sloan argued that Sandton was oversecured; Sandton argued the opposite. But the court found that the Stipulation was essentially an agreement between the parties as to the value of the collateral and that Sandton was fully secured. And while Sloan could have requested a valuation determination in the context of his claim objection as allowed by Rule 3012, the court noted that he did not ask for one; he simply argued that Sandton was not entitled to postpetition interest and late charges because its claim was unsecured.

Postpetition interest and late fees were charged by Sandton up until Hamburg Ranch and the 4-S Property were sold, at which point those charges ceased. Sandton's amended claim was consistent with the Stipulation and the sales results. Because it was agreed in the Stipulation that Sandton was fully secured, Sandton's claim accrued postpetition interest and late charges at the daily rate up until the foreclosure sales. Sandton's amended claim accounted for the credit bids at the foreclosure sales and deducted those amounts from the total amount accrued up to the sale dates of April 27 and 29, 2021. The remaining balance of $40,823,797.25 stated in the amended claim was unsecured. As Sandton's counsel noted at the claim objection hearing, the amended unsecured claim was simply a reflection of what occurred at the foreclosure sales; Sandton was not changing the agreement as to what

10

amount was due nor waiving its right to the agreed postpetition interest and late charges.

Sloan then tried to change the parties' agreement embodied in the Stipulation when it became clear he had made a bad deal. In his amended plan, Sloan asserted that Sandton's claim should be approximately $27 million and not $40 million, eliminating all of Sandton's postpetition interest and late charges accrued after the petition date and up until the foreclosure sales. Sandton disputed Sloan's new position, but to avoid a contested plan confirmation hearing, which clearly benefitted Sloan, the parties agreed to add a provision to the plan acknowledging that the plan did not fix the amount of Sandton's claim and that there would be a separate proceeding to determine the correct amount. That apparently was the claim objection. There, Sandton correctly asserted, and the bankruptcy court correctly found, that Sloan was bound by the Stipulation.

Sloan argues that he was not bound by the Stipulation because the value determined was in the context of stay relief, and case law holds that a valuation in the context of a stay relief matter is not binding on the parties for purposes of § 506(a). First, as the bankruptcy court correctly observed, no one requested a valuation of Sandton's collateral under § 506(a) at any time prior to foreclosure or plan confirmation, and Sloan did not request one in his claim objection. Second, as the bankruptcy court also correctly observed, the Stipulation did more than simply determine the value of Sandton's claim for purposes of stay relief. It also determined the amount of the claim, provided

for consistent plan treatment, provided Sandton with the right to pursue avoidance actions, and extended the deadline for Sandton to file any §§ 523 or 727 actions. In short, the Stipulation resolved issues in the case and provided a path to confirmation.

In addition, nothing in the Stipulation indicates that the parties' representations as to the amount owed by Sloan was limited solely to the context of stay relief. Sandton also acted in reliance on the Stipulation in the context of plan confirmation; it did not object and voted for the plan. Sloan fails to acknowledge that in exchange for the Stipulation he got nearly four more months to try to sell the properties or refinance the Sandton loan, he avoided a two-day stay relief evidentiary hearing, and he avoided a contested plan confirmation hearing.

The bankruptcy court did not articulate that Sloan had failed to sufficiently rebut the presumption as to the prima facie validity and amount of Sandton's claim as the basis for overruling his claim objection. However, we can conclude that was the case given the Stipulation. Therefore, it did not err in allowing Sandton's claim for $40,823,797.25, to include postpetition interest and late charges.

## CONCLUSION

For the reasons stated above, we AFFIRM.