NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY APPELLATE PANEL
### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>RONDA ANNE CHAVEZ,<br>　　　　　Debtor. | BAP No. NV-24-1184-BCL<br><br>Bk. No. 22-12889-nmc |
| RONDA ANNE CHAVEZ,<br>　　　　　Appellant,<br>v.<br>REAL TIME RESOLUTIONS, INC.,<br>　　　　　Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Natalie M. Cox, Chief Bankruptcy Judge, Presiding

Before: BRAND, CORBIT, and LAFFERTY, Bankruptcy Judges.

### INTRODUCTION

Chapter 13[1] debtor Ronda Anne Chavez appeals an order overruling her objection to a secured claim filed by Real Time Resolutions, Inc. ("RTR"). RTR filed a proof of claim with respect to a promissory note secured by a second deed of trust against Ms. Chavez's residence in Nevada. Ms. Chavez

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "NRS" references are to the Nevada Revised Statutes.

challenged the claim, arguing that RTR was not entitled to enforce the promissory note under NRS 104.3309, which allows a party to enforce a lost, destroyed, or stolen instrument if it meets certain statutory requirements, including establishing that the loss occurred at a time when the note was in the possession of a person entitled to enforce it.

After an evidentiary hearing, the bankruptcy court summarily found that RTR satisfied the requirements of NRS 104.3309 and allowed the claim as filed. Ms. Chavez argues that RTR failed to meet its burden to establish its right to enforce the lost note. We agree, and conclude that the bankruptcy court clearly erred in finding that RTR provided sufficient evidence to show that it acquired ownership of the note from a person who was entitled to enforce the note at the time it was lost. Accordingly, we REVERSE.

## FACTS

### A.  The loan

This case appears to be a leftover from the U.S. housing bubble in the early 2000s, where bad business practices and sloppy recordkeeping frequently led to the loss of the original mortgage note. The facts are essentially undisputed.

In November 2006, Ms. Chavez executed a promissory note in favor of Resmae Mortgage Corporation ("Resmae") for $68,000 (the "Note"). The Note was secured by a second deed of trust (the Note, together with second deed of trust, the "Loan"). Ms. Chavez appears to have been in default on the Loan as early as June 2007.

Aurora Loan Services ("Aurora") was the original servicer of the Loan, followed by Solace Financial, LLC ("Solace") in 2011. In 2013, RTR took over servicing the Loan from Solace.

In May 2018, Real Time Group, Inc. (an RTR affiliate) purchased the Loan as part of a mortgage loan pool from Lehman Brothers Holdings, Inc. ("Lehman"),[2] as evidenced by a Bill of Sale. Real Time Group, Inc. then assigned its interests in the Loan to Garrett Acquisitions, LLC, which thereafter appointed RTR as its nominee to hold title to the Loan on its behalf. RTR promptly notified Ms. Chavez that it had purchased the Loan.[3]

In December 2021, the second deed of trust was assigned to RTR. It appears that around this time RTR commenced a nonjudicial foreclosure for the residence, which may explain the trust deed assignment at that time. It is undisputed that RTR never possessed the original Note. RTR never obtained the "collateral file" which contained the original Note and other Loan documents from either Lehman or Solace.

**B.    The bankruptcy and RTR's proof of claim**

Ms. Chavez filed a chapter 13 bankruptcy case on August 15, 2022. She valued the residence at $420,000 and listed RTR as a secured creditor with a "disputed" claim for $192,373.47.

---

[2] Lehman filed for bankruptcy in New York in September 2008.

[3] Ms. Chavez made no payments to RTR since it began servicing the Loan in 2013, nor did she make any payments to Solace, claiming she never heard of them. Ms. Chavez testified that she never received any Loan statements from RTR, and that she did not learn about the second deed of trust or RTR until a title search was conducted in August 2019. Ms. Chavez testified that no entities other than RTR had tried to collect on the Note.

RTR filed a secured proof of claim for $195,999.40, and later amended the proof of claim to include a "Lost Note Affidavit" signed by a Lehman representative. However, it was a Lost Note Affidavit in name only. It did not provide any information as to whether Lehman ever possessed the Note, whether Lehman lost the Note or whether Lehman was entitled to enforce it at the time it was lost. It merely identified the Note at issue, acknowledged the sale of the Loan to RTR in May 2018 based on the Bill of Sale, and stated that Lehman was "not in a position to independently verify any information with respect to the Loan." Further, in light of a September 14, 2022 order entered in the Lehman bankruptcy case, authorizing it to abandon or destroy all residential mortgage loan records, Lehman was unable to locate the original Note or any related Loan records, to the extent it possessed these documents at the time of the order.

Ms. Chavez objected to the claim, arguing that RTR failed to show that it was a person not in possession of the Note but entitled to enforce it under NRS 104.3309, as required by NRS 104.3301(1)(c). Ms. Chavez argued that the Lost Note Affidavit did not establish that RTR acquired the Note from a person who was entitled to enforce it when the loss occurred, because it did not establish how or when Lehman acquired the Note or from whom, or that Lehman ever had the right to enforce the Note.

Ms. Chavez and Veronica Gutierrez, an employee of RTR, testified at an evidentiary hearing on the claim objection. After the hearing, the bankruptcy court overruled Ms. Chavez's objection and allowed RTR's claim as filed. The

4

court found that Ms. Gutierrez's testimony, the Lost Note Affidavit, and RTR's exhibits supported the necessary requirements under NRS 104.3309 to establish RTR's right to enforce the lost Note. Ms. Chavez timely appealed.

## C. Post-appeal events

After the bankruptcy court denied Ms. Chavez a stay pending appeal, she sought a stay before the BAP, which was granted in part. The motions panel determined that the bankruptcy court's ruling indicated a lack of evidence to prove that RTR acquired ownership of the Note from a person who was entitled to enforce it when loss of possession occurred. Therefore, it was not clear how RTR could have satisfied the first prong of NRS 104.3309.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in overruling Ms. Chavez's objection to RTR's claim?

## STANDARDS OF REVIEW

"An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 918 (9th Cir. BAP 2011). De novo review is independent, with no deference given to the bankruptcy

court's conclusion. *Allen v. U.S. Bank, N.A. (In re Allen)*, 472 B.R. 559, 564 (9th Cir. BAP 2012) (citation omitted). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

### A.    Legal standards for claim litigation

A claim is "deemed allowed" unless a party in interest objects. § 502(a). A procedurally compliant proof of claim is prima facie evidence of the validity and amount of the claim. Rule 3001(f). To defeat a prima facie valid claim under § 502(a), an objecting party must present sufficient evidence to overcome the proof of claim's presumption of validity or amount. *Margulies Law Firm, APLC v. Placide (In re Placide)*, 459 B.R. 64, 72 (9th Cir. BAP 2011). If the objector produces sufficient evidence to rebut the Rule 3001(f) presumption, the burden of production shifts back to the claimant to prove the validity and amount of its claim by a preponderance of the evidence. *Id.* However, the claimant ultimately bears the burden of persuasion. *Id.*

### B.    The bankruptcy court erred in overruling the claim objection.

#### 1.    Applicable Nevada law

Resmae endorsed the original Note in "blank" such that the subsequent "holders" of the Note would be entitled to enforce it. *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 261 (Nev. 2012); *see also* NRS 104.3205(2) (explaining that an instrument endorsed in blank is "payable to bearer and may be negotiated by transfer of possession alone"). Because of the blank endorsement,

6

physically possessing the original Note makes it enforceable.

It is undisputed that RTR never possessed the original Note and that it has been lost or destroyed. NRS 104.3309 provides that a person can establish its right to enforce a lost note if: (1) the person was entitled to enforce it when possession was lost, or the person acquired ownership, whether directly or indirectly, from a prior owner who was entitled to enforce it when possession was lost; (2) possession was not lost due to a transfer by the person or a lawful seizure; and (3) the person cannot reasonably obtain possession of the note because it was lost, destroyed, or stolen. NRS 104.3309(1)(a)-(c);[4] *Jones v. U.S. Bank, N.A.*, 460 P.3d 958, 961 (Nev. 2020). This showing may be made by a lost-note affidavit and other secondary evidence to demonstrate that the enforcing party is entitled to enforce the lost note. *Jones*, 460 P.3d at 960. The enforcing party bears the burden of establishing, by a preponderance of the evidence, both the terms of the note and its right to enforce the note. NRS

---

[4] NRS 104.3309 provides, in relevant part:
1. A person not in possession of an instrument is entitled to enforce the instrument if:

> (a) The person seeking to enforce the instrument:
>> (1) Was entitled to enforce the instrument when loss of possession occurred; or
>> (2) Has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred.
>
> (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and
> (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

104.3309(2); *Jones*, 460 P.3d at 961. Finally, the court may only permit a party to enforce a lost note if it finds that the payor is adequately protected from third-party claims. *Id.*

## 2. Analysis

NRS 104.3309(1)(a) required that RTR prove one of two things, that it either (1) had possession of the original Note at the time of the loss, or (2) had acquired ownership of the Note from a person who possessed the original Note at the time of the loss. RTR admittedly was never in possession of the original Note, so it could not establish that it was entitled to enforce the Note when loss of possession occurred. This meant that RTR had to prove that it acquired ownership of the Note from a person who was entitled to enforce it when loss of possession occurred.

The bankruptcy court found that RTR provided sufficient evidence to establish its right to enforce the lost Note. Ms. Chavez argues that this was error. We agree. While the bankruptcy court recited the facts of the case and the applicable law, it did not explain how or why these facts supported its conclusion that RTR satisfied the requirements of NRS 104.3309. Specifically, as to NRS 104.3309(1)(a), it is not clear how the court determined, or could have determined, that RTR acquired ownership of the Note from a person who was entitled to enforce it when it was lost.

RTR relied on the Lost Note Affidavit from Lehman, trial testimony from RTR employee Ms. Gutierrez, and exhibits relating to the Loan. The Lost Note Affidavit offered nothing regarding the possession or transfer of the

8

original Note. It said nothing about whether Lehman ever received the original Note or from whom, when it was lost, who possessed it when it was lost, or who was entitled to enforce it when loss of possession occurred. Lehman could not even verify if the original Note was destroyed under the 2022 court order, because the affiant's equivocal statement, "to the extent [Lehman] was in possession of the Note or related records at the time of the effectiveness of the Order," indicated that Lehman did not know if it even held the original Note. Therefore, RTR's assertion that the Lost Note Affidavit showed that Lehman was entitled to enforce the Note at the time of its disappearance is unfounded.

Ms. Gutierrez's testimony, while credible, also did not establish the essential facts RTR needed to satisfy NRS 104.3309(1). Ms. Gutierrez testified that she "believed" Lehman purchased the Loan from Resmae. Ms. Gutierrez's testimony also established the timeline and chain of servicers for the Loan from its inception. However, Ms. Gutierrez did not know when Resmae last possessed the original Note, when or even whether Resmae transferred the original Note to Lehman, or when the original Note was lost or destroyed. Ms. Gutierrez did not testify that servicers Aurora or Solace serviced the Loan for Lehman, only that they serviced the Loan. RTR's counsel stated in his opening argument at the evidentiary hearing that RTR would prove that Lehman was in possession of the original Note, endorsed in blank from Resmae, for a period of time until it was lost. But RTR did not prove that.

9

Finally, RTR's exhibits did not, as it contends, provide evidence of an "unbroken" chain of possession that necessarily encompassed the person entitled to enforce the Note at the time of its loss. The servicing records, 2018 Bill of Sale, and the 2021 Assignment of Deed of Trust did not establish a clear chain of possession of the original Note from Resmae to Lehman.

Put simply, RTR's evidence did not establish by a preponderance of the evidence that it acquired ownership of the Note from a person who was entitled to enforce it when loss of possession occurred, because RTR failed to establish how or when Lehman acquired the original Note or from whom, when the original Note was lost, and whether it was lost at a time when Lehman had the right to enforce it, if Lehman ever did. With these critical, predicate facts missing, the bankruptcy court's finding that RTR satisfied the requirements of NRS 104.3309 so that it was entitled to enforce the lost Note was clearly erroneous. Its finding is not supported by the record. *In re Retz*, 606 F.3d at 1196. Accordingly, the objection should have been sustained, and we must reverse the order allowing RTR's claim.

## CONCLUSION

For the reasons stated above, we REVERSE.