NOT FOR PUBLICATION

FILED

MAR 6 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DEBBIE REID O'GORMAN,<br>　　　　　　　Debtor. | BAP No. NC-23-1043-BSG<br><br>Bk. No. 21-10374-RLE |
| GRANT REYNOLDS REVOCABLE<br>LIVING TRUST,<br>　　　　　　Appellant,<br>v.<br>TIMOTHY W. HOFFMAN, Chapter 7<br>Trustee,<br>　　　　　　Appellee. | MEMORANDUM[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Roger L. Efremsky, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Appellant, the Grant Reynolds Revocable Living Trust, appeals an order sustaining the chapter 7[1] trustee's objection to the trust's secured claim filed by Grant Reynolds, the trustee of the trust.[2] The bankruptcy court determined

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We refer to the trust and Mr. Reynolds as "Reynolds."

1

that Reynolds failed to prove a secured claim in any amount and disallowed the claim in its entirety. Seeing no reversible error, we AFFIRM.[3]

## FACTS

### A.    Events leading to Reynolds's claim

Debtor Debbie Reid O'Gorman held title to real property in Calistoga, California ("Property"). At one point, O'Gorman believed that the City of Calistoga had violated her water rights. In 2007, Reynolds began researching the matter for which O'Gorman paid him $5,000 per month "for many months."

Deciding to pursue litigation, on January 1, 2008, O'Gorman, Matthew Hickerson (her significant other), and Jeffrey Bounsall entered into an agreement that they would share in any recovery from the water rights litigation ("2008 Agreement"). The 2008 Agreement stated that O'Gorman and Hickerson paid Reynolds $5,500 to further investigate the water rights claims and that Bounsall had to either contribute his 49% share of Reynolds's fee ($2,695) or reimburse O'Gorman and Hickerson for the $5,500.

On June 1, 2010, O'Gorman signed a promissory note ("2010 Note") and a second deed of trust ("2010 DOT") in favor of Reynolds (together, the "2010 Note and DOT"). The 2010 Note provided that O'Gorman, "for value received," promised to pay Reynolds $4 million together with interest at 3% in

---

[3] Prior to oral argument scheduled for September 28, 2023, the parties requested a 60-day continuance to finalize a proposed settlement, which the Panel granted, and the matter was taken off calendar. Ultimately, settlement negotiations failed. However, we conclude that this case is suitable for decision without oral argument. *See* 9th Cir. BAP Rule 8019-1.

one lump sum on June 1, 2015. The 2010 Note was secured by the 2010 DOT against the Property. The 2010 DOT stated that it was for the purpose of securing the payment of $4 million made by Reynolds to O'Gorman, and any additional sums loaned to O'Gorman when evidenced by a promissory note stating that it was secured by the 2010 DOT. Reynolds never lent $4 million to O'Gorman.

In 2012, O'Gorman wrote a letter to Reynolds ("2012 Letter") acknowledging that he had "not been paid in quite a while" and that he had to mortgage his home to continue funding the water rights litigation. O'Gorman promised Reynolds that he would be reimbursed once everything was over and that the amount owed would be secured by the 2010 DOT.

In 2013, Reynolds, O'Gorman, Hickerson, and the Kinnamans (assignees of Bounsall) signed an agreement ("2013 Proceeds Agreement") which provided that the parties would share any recovery in the water rights litigation as follows: one third to O'Gorman and Hickerson; one third to Reynolds; and one third to the Kinnamans.

The plaintiffs were unsuccessful in the water rights litigation; the City of Calistoga prevailed.

In 2019 and 2020, to prevent Mr. Cooper, the first lienholder, from foreclosing on the Property, Reynolds cured O'Gorman's defaults on her indebtedness to Mr. Cooper totaling approximately $180,000. O'Gorman does not dispute that Reynolds paid at least this amount to Mr. Cooper on her behalf. During this time, and unbeknownst to Reynolds or Mr. Cooper,

3

O'Gorman transferred her interest in the Property into an irrevocable trust to prevent Reynolds from completing the foreclosure he commenced in 2020.

O'Gorman filed a chapter 7 bankruptcy case on August 19, 2021. Timothy W. Hoffman ("Trustee") was appointed as the chapter 7 trustee. O'Gorman valued the Property at $2.9 to $3 million, which was subject to Mr. Cooper's lien for $800,000. O'Gorman scheduled Reynolds as a secured creditor but disputed his alleged secured claim for $1.5 million.

Despite receiving notice of O'Gorman's chapter 7 filing, Reynolds proceeded with a foreclosure sale for the Property on August 20, 2021. He was the successful bidder with a credit bid of $1,499,414.78.

**B.    The claim objection**

Reynolds filed a $1,493,674.13 secured proof of claim for what he described as "services performed, money loaned." Attached were copies of the 2010 Note and DOT and the assignment of both documents from Mr. Reynolds to his trust.

Trustee objected to Reynolds's secured claim in its entirety. He argued that the 2010 Note and DOT did not reference any agreement to render services as Reynolds contended, or to any obligation other than the $4 million loan that was never made. Although Reynolds asserted that O'Gorman was obligated to pay him $5,500 per month for providing years of services in the water rights litigation, he produced no written agreement evidencing that obligation. And other than the 2010 Note, argued Trustee, there were no additional notes that could be secured by the 2010 DOT. While the 2012 Letter

4

acknowledged an unpaid debt to Reynolds that would be secured by the 2010 DOT, O'Gorman did not quantify its amount, the basis for the debt, or the source for repayment. Finally, Trustee argued that the 2013 Proceeds Agreement could not be the basis for any claim, because the water rights litigation did not result in any recovery.

Reynolds opposed Trustee's claim objection. He contended that the 2010 Note and DOT functioned like an attorney's charging lien and was not a loan. Reynolds argued that O'Gorman owed him for various debts which he contended were secured by the 2010 DOT, including: (1) $774,411.05 for his litigation services ($5,500 per month @ 3% interest for 10 years); (2) $200,000 for the loan he took out to pay Mr. Cooper; (3) $274,000 for his income taxes due going forward from September 2012; and (4) $16,100 for property tax payments he made on O'Gorman's behalf.

Reynolds explained that he was paid under the terms of the 2008 Agreement – $5,500 per month – for his services in the water rights litigation for 2008 and 2009. In late 2009, when O'Gorman could no longer pay her share of his fees going forward and the other investors refused to contribute their share, Reynolds and O'Gorman executed the 2010 Note and DOT, which he maintained was a guarantee for reimbursement under the 2008 Agreement and any damages that he might suffer in the water rights litigation. Reynolds contended that the 2012 Letter was O'Gorman's acknowledgement that he would be reimbursed for what he was owed and that he could continue using the 2010 Note and DOT as collateral. Reynolds explained that the parties

5

drafted the 2013 Proceeds Agreement because O'Gorman was to undergo an operation that she might not survive.

However, regardless of the various agreements, Reynolds argued that his secured claim was based entirely on the 2010 Note and DOT; the 2008 Agreement was irrelevant. Reynolds disputed Trustee's characterization of the 2010 Note as a "loan" and argued that the words "for value received" was sufficient evidence of the consideration O'Gorman received for it and prima facie evidence of the debt. Reynolds argued that Trustee could not rely on extrinsic evidence to challenge the facially valid 2010 Note and DOT, nor could Trustee avoid the 2010 DOT under § 544(b) because the seven-year statute of limitations under CAL. CIV. CODE § 3439.09(c) had run.

In reply, Trustee argued that Reynolds could not rely on extrinsic evidence to determine the parties' subjective intent in drafting any of the documents, including the 2010 Note and DOT. Trustee argued that the declarations Reynolds offered in support of his opposition were replete with hearsay and inadmissible parol evidence of the parties' subjective intent, while their objective intent was plain from the documents themselves. Trustee disputed that the statute of limitations precluded his objection to Reynolds's claim. Trustee was not contending that the 2010 DOT was fraudulent, only that the bankruptcy estate owed Reynolds nothing on account of the 2010 Note and DOT. Further, argued Trustee, the statute of limitations was not a bar to a legitimate defense to the claim.

After a hearing, the bankruptcy court announced its oral ruling sustaining Trustee's claim objection and disallowing Reynolds's secured claim in its entirety. The court concluded that Reynolds failed to establish that the unambiguous 2010 DOT secured a debt for $1,493,674.13, or any other amount. This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in sustaining Trustee's objection and disallowing Reynolds's secured claim?

## STANDARDS OF REVIEW

Claims objection appeals can involve both legal and factual issues. We review the legal issues de novo and the factual issues for clear error. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 918 (9th Cir. BAP 2011). Whether the evidence in support of a claim objection sufficiently rebuts the evidentiary presumption under Rule 3001(f) is a question of fact we review for clear error. *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000) (citing *Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)*, 96 B.R. 275, 277 (9th Cir. BAP 1989)).

De novo review means that we consider the matter anew and give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014). Factual findings are clearly erroneous if

7

they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

### A. Legal standards for claims litigation

A duly executed proof of claim is prima facie evidence of the validity and amount of the claim. Rule 3001(f). Under § 502(a), the claim is "deemed allowed" unless a party in interest objects. An objecting party must present evidence to overcome the proof of claim's presumption of validity or amount. *Margulies Law Firm, APLC v. Placide (In re Placide)*, 459 B.R. 64, 72 (9th Cir. BAP 2011). If the objector produces sufficient evidence to rebut the Rule 3001(f) presumption, the burden of production shifts back to the claimant to prove the validity and amount of its claim by a preponderance of the evidence. *Id.* However, the claimant ultimately bears the burden of persuasion. *Id.*

### B. Governing contract law

The 2010 Note and DOT are California contracts. In California, the interpretation of a contract is a question of law which the court reviews de novo. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1064 (9th Cir. 2002) (citations omitted). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible[.]" CAL. CIV. CODE § 1639. "The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties. If contractual language is clear and explicit, it governs." *In re Bennett*, 298 F.3d at 1064 (cleaned up); *see also* CAL. CIV. CODE §§ 1636 & 1638; *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44,

8

54-55 (1997) (noting that the parties' objective intent, as evidenced by the words of the document, determines the meaning of the contract, not a party's subjective intent). Generally, if a written contract "was intended to be the complete and final expression of the parties' intent," extrinsic evidence cannot be used to interpret it. *In re Bennett,* 298 F.3d at 1064. Put another way, if the contract is "fully integrated," the parol evidence rule prohibits consideration of evidence of meaning beyond the contract itself, such as any prior agreements or contemporaneous oral agreements. *See id.; see also* CAL. CIV. CODE § 1856.

C.      **The bankruptcy court did not err in sustaining Trustee's objection and disallowing Reynolds's secured claim.**

The bankruptcy court ruled that Trustee met his burden to rebut the presumption of the claim's validity and amount, and that Reynolds failed to sustain his ultimate burden of persuasion that the 2010 Note and DOT supported a secured claim for $1,493,674.13. The court determined that the purpose of the 2010 DOT was to secure the 2010 Note, which the court determined was for a $4 million loan that was never given to O'Gorman, and any other amounts Reynolds loaned to her evidenced by a promissory note. While O'Gorman may have agreed to pay Reynolds $5,500 per month for his litigation services, the court found that the 2010 Note and DOT did not support this; the documents made no reference to any such preexisting agreement. The court also found that the 2012 Letter did not constitute a promissory note under the 2010 DOT. While the 2012 Letter acknowledged that Reynolds had not been paid for some time, O'Gorman did not articulate

9

what amount was owed to him, what was paid to him in the past, what he was paid for, or the source for repayment. Further, the 2010 DOT secured only future "sums which may be loaned," not future services.

Consequently, the court concluded that the amount secured by the 2010 DOT was zero. It rejected Reynolds's declarations as impermissible parol evidence which contradicted the plain language of the 2010 Note and DOT. The court noted that even if it considered the 2008 Agreement, which was the only document that referenced the $5,500 and which Reynolds argued was "irrelevant" to the claim, that agreement contemplated only a one-time payment of $5,500, not a continuing monthly payment, based on its language that the contracting parties might have to provide "future funding" for the litigation. The court also determined that the 2013 Proceeds Agreement could not provide a basis for a secured claim; the water rights litigation was not successful and there was no recovery.

Reynolds raises several arguments on appeal, which we address in turn. First, he argues that the bankruptcy court erred in holding that the 2010 Note was void for lack of consideration. The court did not so hold. In fact, it found that the 2010 Note and DOT were valid. However, the validity of those documents was not in question. The question was how much, if anything, was owed under the 2010 Note and DOT. Ultimately, the court concluded that the 2010 DOT did not act as security for the 2010 Note because the $4 million payment was never given to O'Gorman. And no other sums were loaned to O'Gorman as evidenced by a different promissory note secured by the 2010

DOT. Reynolds argues that O'Gorman got what the 2010 Note states – "value received." When the court asked Reynolds what consideration he gave O'Gorman in exchange for the 2010 Note, he refused to answer, erroneously claiming that the information was barred by the parol evidence rule. However, it was undisputed that O'Gorman did not receive $4 million from Reynolds as stated in both the 2010 Note and DOT.

Next, Reynolds argues that the bankruptcy court erred in characterizing the 2010 Note and DOT as a "loan." He argues that neither of the documents uses the word "loan" nor do they imply that a loan was already made. Rather, argues Reynolds, the documents were a guarantee for unpaid services rendered, which were subsumed in the language "for value received," as well as for future anticipated services. We disagree. First, the plain language of the 2010 DOT belies this. According to the document, it was "[F]or the Purpose of Securing (1) payment of the sum of $4,000,000 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of the beneficiary . . . (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor . . . when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust." The 2010 DOT does not state that it was for the purpose of securing past services rendered or for securing future services, and it refers only to the 2010 Note, which says nothing about services. Further, that "additional sums" could be "loaned" implies that the $4 million was a loan. Finally, the 2010 Note provides that the entire $4 million plus interest would

11

be due and payable in one lump sum on June 1, 2015 – five years later, which also infers a loan. As the court observed, that language is inconsistent with Reynolds's claim that the agreement was that he would be paid, and had previously been paid, $5,500 per month for his litigation services on an ongoing basis.

Reynolds also argues that the bankruptcy court erred when it relied on parol evidence to circumvent the 2010 Note's plain meaning of "for value received." It is not entirely clear what Reynolds is arguing here, but he seems to suggest that the court erred in determining that the 2010 Note was invalid by relying on parol evidence to decide that "for value received" referred to a loan and not to Reynolds's past and future services. Again, the court did not find that the 2010 Note was invalid. And it did not rely on parol evidence to determine that the 2010 Note was for a loan that was never made. To the contrary, the court made that determination by reviewing the four corners of the document and by accepting the parties' undisputed testimony that Reynolds did not make any loans to O'Gorman.

Next, Reynolds argues that O'Gorman and Trustee were judicially estopped from asserting that the 2010 Note and DOT was for an unfunded loan, when they had previously, and successfully, argued in Trustee's adversary proceeding avoiding O'Gorman's fraudulent transfer of the Property that the 2010 Note and DOT served as a guarantee to ensure that Reynolds would be paid for his services. Reynolds did not raise this argument before the bankruptcy court. Generally, we do not consider arguments raised

12

for the first time on appeal. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

Even if we did consider it, the argument lacks merit.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001). The court should consider the following three factors in determining whether the doctrine is applicable in a given case:

> (1) whether the party's later position is clearly inconsistent with its earlier position;
>
> (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and
>
> (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 994 (9th Cir. 2012) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

Reynolds relies on the following statements Trustee and O'Gorman made in the adversary proceeding, which preceded Trustee's claim objection by over two months and before Reynolds had provided Trustee with all of the documents he contended supported his secured claim:

> [TRUSTEE] In 2010, the Debtor gave Grant Reynolds a deed of trust against the Property to ensure that he would be protected

13

from claims for damages in connection with his investigation of claims and litigation against the City of Calistoga.

[O'GORMAN] In 2010, I signed a deed of trust in favor of Grant Reynolds that was recorded against the Property. Mr. Reynolds asked me to sign the deed of trust to ensure that he would be protected from claims for damages while conducting investigation and litigation against the City of Calistoga relating to a water rights dispute.

Nothing in the record establishes that these statements were offered by Trustee to persuade the bankruptcy court to accept a position on the character of the debt O'Gorman believed she owed to Reynolds, nor did Trustee ask the court to do so. Further, nothing suggests that the court accepted that the 2010 Note and DOT evidenced a guarantee for payment of services and not a loan. In fact, in affirming the bankruptcy court on appeal, we stated that O'Gorman gave Reynolds the 2010 DOT as security for a "loan." At the time of the adversary proceeding, Reynolds appeared to be a secured creditor, having foreclosed on the 2010 DOT the day after O'Gorman filed for bankruptcy. But after the sale was rescinded and Reynolds failed to provide any document obligating O'Gorman to pay him $5,500 per month for 10 years, Trustee filed his claim objection contending that no loan was given to O'Gorman secured by the 2010 DOT and that the operative documents – the 2010 Note and DOT – did not demonstrate the existence of a monthly obligation. Put simply, judicial estoppel was not applicable in this case.

Reynolds next argues that the bankruptcy court abused its discretion and denied him due process by not allowing him to file a surreply to Trustee's

14

reply to the claim objection. At the hearing, Reynolds began by arguing that Trustee's reply brief was filed two days late. The court asked Reynolds if he wished to proceed or if he wanted to continue the hearing to allow him more time to prepare an argument in response to Trustee's reply. Either way, however, the court reminded Reynolds that the evidentiary record was closed and that no further papers could be filed; any continued hearing was for argument only. Reynolds replied that, although he felt "ambushed," he wanted to proceed. With that, the court noted for the record that Reynolds had waived his objection as to the untimeliness of Trustee's reply brief.

Reynolds does not say how not filing a surreply prejudiced him. An alleged due process violation cannot constitute reversible error unless the party asserting the violation can demonstrate prejudice. *See Rosson v. Fitzgerald (In re Rosson),* 545 F.3d 764, 776-77 (9th Cir. 2008), *partially abrogated on other grounds as recognized by Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols),* 10 F.4th 956, 962 (9th Cir. 2021). Reynolds argues that in a surreply he could have addressed the statute of limitations issue raised for the first time in Trustee's reply. But that argument was not raised for the first time in Trustee's reply. Reynolds raised it, not only in his opposition to the claim objection but in other contested matters before that. And the bankruptcy court rejected it. Further, Reynolds told the court that he wished to proceed despite his objection. Thus, the court correctly found that Reynolds waived his objection to the untimely reply brief, and he was not deprived of due process by the inability to file a surreply.

Next, Reynolds argues that the bankruptcy court failed to consider his statute of limitations defense. This is false. Reynolds argued that Trustee could not avoid the 2010 DOT because the seven-year statute of limitations under CAL. CIV. CODE § 3439.09(c) had run. The court considered, but rejected, Reynolds's argument for two reasons. First, it rejected it for the reason stated in Trustee's reply. Trustee had argued that Reynolds was raising the statute of limitations improperly as a sword and not a shield. We agree. The defense of statute of limitations should be used only as a shield, not a sword. *City of Saint Paul v. Evans,* 344 F.3d 1029, 1033 (9th Cir. 2003). "Indeed, courts generally allow defendants to raise defenses that, if raised as claims, would be time-barred." *Id.* (citing *United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 72 (1956) ("To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation.")). "Without this exception, potential plaintiffs could simply wait until all available defenses are time barred and then pounce on the helpless defendant." *Id.* at 1034 (citing *W. Pac. R.R. Co.,* 352 U.S. at 71).

While Reynolds calls his use of the statute of limitations a "defense," that is not the way he is using it. He, the plaintiff in this context, is attempting to support an affirmative claim for a secured debt and argue that Trustee, the defendant, is barred from questioning what Reynolds was owed because seven years had passed since the 2010 DOT was recorded. *See Brosio v. Deutsche Bank Nat'l Tr. Co. (In re Brosio),* 505 B.R. 903, 912-13 (9th Cir. BAP

16

2014) (observing that the filing of a proof of claim is analogous to filing a complaint, and a claim objection by the trustee or debtor-in-possession is analogous to an answer). The second reason the court rejected Reynolds's statute of limitations argument is because it was inapplicable. We agree. Trustee was not attempting to avoid the 2010 DOT as a fraudulent transfer; rather, he was arguing that it had no value.

Finally, Reynolds argues that the bankruptcy court imposed a double standard by utilizing extrinsic facts to support its decision, but then ruled that these same facts offered in Reynolds's declarations in opposition to the claim objection were inadmissible parol evidence. Basically, Reynolds argues that if the court could use extrinsic evidence to support its decision, he should have been allowed the benefit of this same evidence to support that the 2010 Note and DOT acted as a guarantee for his receiving payment per the terms of the 2008 Agreement, which he argues contemplated more than just one payment of $5,500. For example, argues Reynolds, the court discussed the history of the water rights litigation based on statements made in the declarations of Reynolds, Hickerson, and the Kinnamans, but then it went on to rule that it would not consider what the declarants stated regarding their intent in the agreements, namely the 2008 Agreement and the 2012 Letter.

We fail to see the "double standard" Reynolds complains of. The court discussing generally the facts of the water rights litigation, which were undisputed, is a far cry from statements the declarants made about what they intended with the 2008 Agreement or the 2012 Letter and how they related to

the 2010 Note and DOT, which contradicted the plain language and objective intent of the 2010 Note and DOT. Just because much of what the declarants stated was inadmissible parol evidence, not everything was, and the court did not err by relying on some of the statements for its recitation of the facts.[4]

## CONCLUSION

In summary, the bankruptcy court did not err in determining that the 2010 Note and DOT did not create an agreement by which Reynolds agreed to provide services to O'Gorman for which she agreed to pay $5,500 per month. Because Reynolds did not carry his burden to establish that the 2010 Note and DOT supported a secured claim for $1,493,674.13, or any other amount, the bankruptcy court did not err in sustaining Trustee's objection and disallowing the claim in its entirety. We AFFIRM.[5]

---

[4] We need not address Reynolds's additional argument that the 2013 Proceeds Agreement did not constitute an accord and satisfaction of the 2010 Note and DOT. The bankruptcy court expressly stated that, given its ruling on the 2008 Agreement and the 2010 Note and DOT, it did not need to rule on Trustee's accord and satisfaction or novation arguments.

[5] Reynolds filed a request for judicial notice asking that we consider portions of a brief the chapter 7 trustee filed in a matter pending before the Ninth Circuit Court of Appeals. Reynolds's request is DENIED because the brief is unnecessary to the disposition of this appeal.